UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHNNIE LITTLE,                     )
                                    )
            Petitioner,             )
                                    )      No. 4:07CV00357 DJS/FRB
                                    )
      v.                            )
                                    )
                                    )
TROY STEELE,                        )
                                    )
            Respondent.[1]          )


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**


         This cause is before the Court on the petition of
Missouri state prisoner Johnnie Little ("petitioner") for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  All pretrial matters
were referred to the undersigned United States Magistrate Judge,
pursuant to 28 U.S.C. § 636(b), for appropriate disposition.

### I.   Procedural History

         On October 29, 1999, a jury in the Circuit Court of the
City of St. Louis, Missouri convicted petitioner of murder in the
first degree, robbery in the first degree, and two counts of armed
criminal action in connection with his actions in August of 1997.
(Respondent's Exhibit ("Resp. Exh.") A at 2, 58-67.)  On December

---

[1]Because petitioner is challenging a sentence to be served in the future,
Missouri Attorney General Chris Koster should be added as a proper party
respondent. Rule 2(a), (b), Rules Governing Section 2254 Cases in the United
States District Courts.

19, 1999, petitioner was sentenced to two life terms and one fifteen-year term, to be served consecutively. (Resp. Exh. B at 651.)

Petitioner appealed his convictions and sentences to the Missouri Court of Appeals, alleging that the trial court erred when it permitted the prosecutor to misdefine the term "deliberation" during closing argument, thereby lessening the state's burden of proof on an element of the first degree murder charge. (Resp. Exh. C.) Due to the lack of objection at trial, the Missouri Court of Appeals reviewed the claim for plain error only, and affirmed petitioner's convictions and sentences in a decision filed December 5, 2000. (Resp. Exh. E); State v. Little, 34 S.W.3d 241 (Mo. Ct. App. 2000).[2]

On April 9, 2001, petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp. Exh. F at 1, 3-20.) On May 24, 2001, counsel entered an appearance for petitioner, and on July 17, 2001, filed a First Amended Motion To Vacate, Set Aside Or Correct Judgment And Sentence And Request For Evidentiary Hearing, pursuant to Rule 29.15. (Id. at 24-31.) Therein, petitioner alleged that trial counsel was ineffective, inasmuch as he: (1) failed to call petitioner to testify on his own behalf at trial;

---

[2]In raising this issue in the Missouri Court of Appeals, petitioner conceded that it was not preserved for review, inasmuch as counsel failed to object to it and failed to include it in the motion for new trial. Petitioner requested plain error review under Missouri Supreme Court Rule 30.20.

(2) failed to investigate and/or call Darlene Pendleton, Charles Crawford, and James Jones as alibi witnesses; and (3) failed to request jury instruction MAI-CR 3d 308.14, which would have instructed the jury not to draw an adverse inference from the fact that petitioner did not testify. (<u>Id.</u>) On February 15, 2002, an evidentiary hearing was held before the Honorable Booker T. Shaw, and on July 13, 2005, The Honorable Lisa Van Amburg, as Judge Shaw's successor, denied petitioner relief. (<u>Id.</u> at 34-42.)

Petitioner appealed the denial of his post-conviction motion to the Missouri Court of Appeals, alleging that trial counsel was ineffective, inasmuch as he: (1) failed to call petitioner to testify on his own behalf at trial; (2) failed to investigate and/or call Darlene Pendleton as a witness; and (3) failed to request jury instruction MAI-CR 3d 308.14. (Resp. Exh. H.) On May 2, 2006, the Missouri Court of Appeals affirmed the motion court's judgment. (Resp. Exh. J); <u>Little v. State</u>, 190 S.W.3d 568 (Mo. Ct. App. 2006).

In the instant Petition, filed on February 20, 2007, petitioner alleges four claims for relief, and specifically,

> (1) That the trial court violated petitioner's right to Due Process when it allowed the prosecutor to misdefine the term "deliberation" during closing argument;
>
> (2) That trial counsel was ineffective inasmuch as he did not have petitioner testify on his own behalf during trial;
>
> (3) That trial counsel was ineffective inasmuch as he did not call Darlene Pendleton

-3-

to testify on petitioner's behalf; and

(4) That trial counsel was ineffective inasmuch as he did not request jury instruction MAI-CR 3d 308.14, which would have instructed the jury not to draw an adverse inference from the fact that petitioner did not testify.

(Docket Nos. 1 and 15.)

## II.    Exhaustion Analysis

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The exhaustion requirement is satisfied if a petitioner has fairly presented his claims first in state court, or if there are no currently available non-futile state remedies. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988).

A review of the record shows that all four of petitioner's claims are exhausted, inasmuch as he has either fairly presented them to the state courts, or currently has no available non-futile state remedies. The undersigned further notes that respondent does not contend that any of petitioner's claims remain unexhausted.

## III.    Procedural Bar Analysis

A claim is barred from federal habeas review if the

petitioner failed to fairly present the substance of the claim to the state courts at each step of the judicial process. <u>Jolly v. Gammon</u>, 28 F.3d 51, 53 (8th Cir. 1994); <u>Wemark v. Iowa</u>, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (citing <u>Anderson v. Groose</u>, 106 F.3d 242, 245 (8th Cir. 1997)). A claim is also procedurally barred from federal review if the state court relied upon a state procedural bar as an independent basis for its disposition of the claim. <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985).

A review of the record shows that each of petitioner's claims in Grounds 2 through 4 were properly presented to the state courts, where they were adjudicated on their merits. Regarding Ground 1, the undersigned notes that, due to the lack of an objection at trial, the issue was not properly preserved for appeal, but was in fact raised on direct appeal and reviewed by the Missouri Court of Appeals for plain error. (Resp. Exh. E at 3). Whether a state appellate court's plain error review of an otherwise procedurally defaulted claim is sufficient to raise the procedural bar is an area of uncertainty.[3] <u>Hornbuckle v. Groose</u>, 106 F.3d 253 (8th Cir. 1997). However, the Eighth Circuit has suggested that, in this situation, the federal habeas court undertake the same review as the state court in determining a petitioner's claim:

---

[3]Although respondent does not address this issue, this Court has the discretion to consider an issue of procedural default <u>sua</u> <u>sponte</u>. <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001).

> We think we should do what the state court
> did: give the point plain error review.  In
> this way, we are not encroaching at all on the
> authority of the state courts; we are fully
> respecting their procedural rule; and we are
> giving the argument the same degree of
> attention that the state courts gave it.

Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir. 1999).

The undersigned further notes that respondent does not contend that any of petitioner's claims are procedurally barred from review.  The undersigned therefore concludes that petitioner's claims in Grounds 2 through 4 are properly before this Court, and that petitioner's claim in Ground 1 should be reviewed for plain error, rather treated as procedurally barred.

## IV.  **Merits of Claims**

As summarized by the Missouri Court of Appeals in its Memorandum Supplementing Order Affirming Judgment Pursuant To Rule 30.25(b), the following facts were adduced at trial:

> Family members discovered the body of 76-year-old Merle Brame (Victim) in the kitchen of her home on August 27, 1997 in the City of St. Louis.  Victim had been hit on the head with a saucepan and then strangled with shoelaces.  When discovered, her clothing was covered in blood and the shoelaces were imbedded in her neck.  Her entire house was in disarray and her purse was missing.  The kitchen floor, garage floor, and doormat were covered with bloody shoe prints matching Converse brand tennis shoes.

> About two months later, the police received a tip to investigate Defendant.  The

police asked Defendant to come to the police station with them to discuss the situation. After waiving his rights, Defendant denied any involvement. When his fingerprints were taken, Defendant began to cry. He then made a videotaped statement confessing to the murder of Victim. He said he knew Victim from church and Victim allowed him to stay at her house because he was homeless. The next day Defendant believed Victim was going to ask him to leave, so he removed his shoelaces and strangled her. Afterward, he stole money from her. Then, he washed his Converse tennis shoes and took them to his cousin's house.

A short time later, Defendant recanted his confession and told the police he made up the story about killing Victim to make a name for himself on the street. In a later interview on the same day, Defendant told police he did go to Victim's house to rob her, but got no answer when he knocked on the door. He entered the house from the back and discovered her body on the floor. He then took money from the house.

The police located Defendant's Converse tennis shoes at his cousin's house. Testing of the shoes revealed blood splatters on them. DNA testing showed the blood was consistent with Victim's blood. An autopsy showed Victim died by strangulation. Defendant strangled victim for approximately ten minutes. In addition, the day before the discovery of Victims' body, Victim's neighbor observed someone on her porch talking with her. The neighbor later identified the person as Defendant. Defendant was speaking to her through the front door, which was unusual for Victim who usually came out onto the porch.

(Resp. Exh. E at 2-3.)

State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). State court findings may not be set aside unless they are unsupported by the record. <u>Sumner v. Mata</u>, 449

U.S. 539, 547-49 (1981), and petitioner bears the burden of establishing that the state court's factual determinations are erroneous. <u>Williams v. Armontrout</u>, 912 F.2d 924, 930 (8th Cir. 1990) (en banc). Petitioner herein makes no effort to rebut the foregoing facts with clear and convincing evidence. Having reviewed the record, the undersigned finds that the state court's findings are supported by the record, and are adopted herein to the extent they relate to the claims petitioner raises in the instant Petition. <u>See</u> <u>Id.</u> at 930-31.

A.    <u>Ground One</u>

For his first claim for relief, petitioner alleges that the trial court violated his right to Due Process when it permitted the prosecutor to misdefine the term "deliberation" during closing argument, thus lowering the state's burden of proof on the first degree murder charge. Petitioner raised this claim on direct appeal and, as discussed above, the Missouri Court of Appeals conducted plain error review, pursuant to Rule 30.20 of the Missouri Supreme Court Rules, and denied petitioner's claim.[4]

---

[4]Rule 30.20 of the Missouri Supreme Court Rules states that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In Missouri state court, review for plain error involves a two step process. The first step is to determine if plain error has occurred. This is done by determining whether the claim for review "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." <u>State v. Brown</u>, 902 S.W.2d 278, 284 (Mo. banc 1995). All prejudicial error is not plain error. "Plain errors are those which are 'evident, obvious, and clear.'" <u>State v. Scurlock</u>, 998 S.W.2d 578, 586 (Mo. Ct. App. 1999) (<u>quoting</u> <u>State v. Bailey</u>, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992)).

(Resp. Exh. E); <u>Little</u>, 34 S.W.3d 241.

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). To justify federal habeas relief, the state court's application of governing federal law must be shown to be not only erroneous, but

_____

If plain error is found, it is up to the discretion of the court whether to proceed to the second step, determining "whether the claimed error resulted in manifest injustice or miscarriage of justice." <u>Id.</u> at 587.

objectively unreasonable. <u>Middleton v. McNeil</u>, 541 U.S. 433, 436,

(2004) (per curiam) (quoting <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5,

(2003) (per curiam)).

At the time Petitioner's conviction became final, the law

was clearly established that the Fourteenth Amendment to the United

States Constitution guarantees a criminal defendant the right to

due process of law.  U.S. Const. Amend. XIV; <u>Darden v. Wainwright</u>,

477 U.S. 168 (1986).  When considering whether comments by a

prosecuting attorney violate the Fourteenth Amendment's due process

guarantee, the relevant question is whether such comments "so

infected the trial with unfairness as to make the resulting

conviction a denial of due process."  <u>Darden</u>, 477 U.S. at 181.

Improper closing argument violates due process when the argument is

so egregious that it renders the entire trial fundamentally unfair.

<u>Id.</u> at 181.

In the instant case, petitioner argues that the trial

court erred when it permitted the prosecutor to misdefine the term

"deliberation" during closing argument, thereby lessening the

state's burden of proof on an essential element of the first degree

murder charge.  In denying petitioner's claim, the state court wrote

as follows:

> Defendant concedes his point is not
> preserved for appellate review because counsel
> failed to object to it and failed to include it
> in the motion for new trial.  Defendant
> requests plain error review under Rule 30.20.
> Under Rule 30.20, we examine whether the
> alleged error impacted so substantially on the

rights of Defendant that manifest injustice or miscarriage of justice will result if the error is not corrected. <u>State v. Stewart</u>, 18 S.W.3d 75, 84 (Mo. App. E.D. 2000). However, we should use this rule sparingly and should "rarely grant relief on assertions of plain error as to closing argument." <u>State v. Clemmons</u>, 753 S.W.2d 901, 907 (Mo. banc 1988). The basis for this rule is that in the absence of objection at trial, the trial court must provide uninvited interference with the closing argument that results in a corresponding increase in trial error for that intervention. <u>Id.</u> at 907-908.

Defendant complains about the following argument:

> The defendant acted with deliberation. Make no mistake here. Deliberation means a decision. You make a decision to continue on with something. You have a moment of cool reflection, and you decide to continue on with what you're doing. And the defendant most certainly did that here. You know when he was standing out on her front porch and she wouldn't let him in, he could have decided, you know what, I'm going to leave this lady alone, I'm going to go somewhere else. He made the decision to persist on. He could have stopped after he hit her on the head.
>
> You know he hit her in the head, she's bleeding, all right, at this point I can go get some money from her and be gone. He had a decision to make, do I keep going with this or do I stop. He decided to keep going. And Dr. Burch told you it took her up to ten minutes to die. After the first minute he could have decided not to kill her. After the second minute he could have decided not to kill her. After the third minute he could have decided and on and on. We

-11-

have deliberation here, ladies and
gentlemen, lots of deliberation.[5]

Deliberation means "cool reflection for
any length of time no matter how brief."
Section 565.002(3), RSMo 1994. Deliberation
may be inferred where the defendant had ample
opportunity to terminate the crime. <u>State v.
Shaw</u>, 14 S.W.3d 77, 86 (Mo. App. E.D. 1999).
Deliberation has been proven when a defendant
hit a victim over the head with a heavy object
and then strangled for four to five minutes.
<u>State v. Simmons</u>, 955 S.W.2d 729, 739 (Mo. banc
1997). Here, the State was simply urging the
jury to infer deliberation from the similar
facts present in this case. While
misstatements of the law are impermissible
during closing arguments, the State did not
misstate the law regarding deliberation or
misdefine it. Indeed, in examining the
totality of the State's argument, it is clear
the State properly defined deliberation and
referred to the jury instruction before making
its argument. The permissible field of closing
argument is broad and the State is permitted
wide latitude in its comments. <u>State v.
Blakeburn</u>, 859 S.W.2d 170, 174 (Mo. App. W.D.
1995).

In addition, the court correctly defined
deliberation in the jury instructions. It is
presumed the jury will properly follow the
instructions given it. <u>Id.</u> We find no error
in the State's argument, plain or otherwise.

The judgment is affirmed pursuant to Rule
30.25(b).

(Resp. Exh. E at 3-5.)

As noted above, this Court will review this claim for

---

[5]In his Petition (Docket No. 1 at 11) and in his Traverse (Docket No. 15
at 8), petitioner cited this portion of the prosecutor's closing argument, but
omitted the last sentence of the first paragraph, and the first sentence of the
second paragraph, both of which referenced the fact that petitioner had hit the
victim on the head. This portion of the closing argument appears in the trial
transcript, Respondent's Exhibit B, at pages 602-603.

plain error. Plain error is error which is both obvious and substantial. <u>United States v. Frady</u>, 456 U.S. 152, 163 (1982), (<u>citing</u> <u>United States v. Gerald</u>, 624 F.2d 1291, 1299 (5th Cir. 1980)). Having thoroughly reviewed and considered petitioner's claim in Ground 1, the undersigned does not think that the challenged statements amounted to obvious and substantial error.

As found by the Missouri Court of Appeals, the challenged statements did not misdefine the element of deliberation. As the Missouri Court of Appeals noted, in Missouri, deliberation means "cool reflection for any length of time no matter how brief," R.S.Mo. § 565.002(3), and can be inferred where the defendant had ample opportunity to terminate the crime. <u>State v. Shaw</u>, 14 S.W.3d 77, 86 (Mo.Ct.App. 1999). In the portion of closing argument petitioner challenges, the prosecuting attorney defined "deliberation" as a "decision," and then stated, "[y]ou have a moment of cool reflection, and you decide to continue on with what you're doing." (Resp. Exh. A at 602.) The prosecutor went on to note that the evidence showed that it took ten minutes for the victim to die, and argued that petitioner could have decided, at any time during that ten minutes, to cease his attack. As the Missouri Court of Appeals found, the prosecutor was merely urging the jury to infer the element of deliberation from the facts. The prosecuting attorney in this case did not err in defining "deliberation" during his closing argument.

Even if it could be said that counsel misstated the law,

the misstatement did not harm petitioner. When counsel misstates the law, the misstatement is harmless error if the court properly instructs the jury on that point of law or instructs that the attorneys' statements and arguments are not evidence. See <u>Griffin v. Delo</u>, 33 F.3d 895, 906 (8th Cir. 1994) (prosecutor's erroneous definition of reasonable doubt in closing arguments was harmless where correctly defined in jury instructions); <u>Girtman v. Lockhart</u>, 942 F.2d 468, 474 (8th Cir. 1991) (misstatement of law was harmless error because the court instructed the jury that statements and arguments of counsel are not evidence). In petitioner's case, both safeguards were in place: "deliberation" was correctly defined in the trial court's instructions to the jury (Resp. Exh. A at 47), and the trial court instructed the jury that counsel's statements were not evidence. (<u>Id.</u> at 57.)

The prosecutor's statements did not deprive Petitioner of due process, nor has Petitioner shown that the prosecutor's comments had a "decisive effect" on the jury, or that they implicated any other constitutional right. See <u>Burns</u>, 173 F.3d at 1095. As such, the decision of the Missouri Court of Appeals was well based on law and fact and was not "contrary to," nor did it involve an "unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). In addition, Petitioner has not shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(2).

The claim raised in Ground 1 of the instant petition is without merit and should be denied.

    B.    Ground 2

        In Ground 2, petitioner argues that he was denied the effective assistance of trial counsel because counsel did not call petitioner to the witness stand to testify on his own behalf. Petitioner raised this issue in his post-conviction motion, and it was denied following an evidentiary hearing. Petitioner raised this issue again on appeal of the denial of that motion. Upon review of the merits of the claim, the Missouri Court of Appeals applied the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and applicable state law, and affirmed. The Missouri Court of Appeals noted that there was no credible evidence that counsel either failed to advise petitioner of his right to testify, or that counsel refused to allow petitioner to testify despite his contrary wishes. (Resp. Exh. J. at 5-8). The Missouri Court of Appeals also found that petitioner had failed to show that there was a reasonable probability that the result of his trial would have been different had he testified. (Id.)

        In this case, it cannot be said that counsel's performance was deficient, inasmuch as there is no evidence that he failed to advise petitioner of his right to testify on his own behalf, or that he refused to call petitioner to testify despite petitioner's contrary wishes. Nor can it be said that petitioner was prejudiced

-15-

by counsel's failure to call him to the stand, inasmuch as there is no evidence that the testimony petitioner would have offered would have helped his defense.

At the time Petitioner's conviction became final, it was clearly established that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Strickland, 466 U.S. 668. There are two components to a successful claim of ineffective assistance of counsel. First, the petitioner must show that counsel's performance was deficient, which requires a showing that counsel erred so seriously that she or he was not functioning as "counsel" guaranteed by the Sixth Amendment. Id. at 686. Second, the petitioner must show that such deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious that petitioner did not receive a fair trial, rendering the resulting conviction unreliable. Id. To establish prejudice, petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner bears a heavy burden in overcoming a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In the instant case, petitioner argues that counsel never advised him that the decision regarding whether to testify was his

to make, and further argues that counsel failed to call him to the stand even after he told counsel that he wished to testify. This argument is not supported by the record. During an evidentiary hearing on petitioner's motion for post-conviction relief, counsel testified that, before trial, he advised petitioner that he had the right to testify in his own defense, and that petitioner was the one to decide whether to do so. (Resp. Exh. G at 37-41.) Counsel further testified that both he and co-counsel discussed with petitioner the potential consequences, both positive and negative, of petitioner taking the witness stand, and allowed petitioner to make his own decision. (Id. at 37-38.) In addition, during petitioner's trial, after the prosecution had rested its case, the trial court held a hearing outside of the jury's presence, during which it advised petitioner that he had a right to testify in his own defense. (Resp. Exh. A at 586-87.) Petitioner testified, under oath, that he understood that he had the right to testify, and that he had chosen not to take the stand in his own defense. (Id. at 587.) Petitioner further testified that he had discussed this issue with counsel, and that he did not need additional time to continue those discussions. (Id.)

As found by the Missouri Court of Appeals, petitioner has failed to show that counsel failed to properly advise him regarding his right to testify, and has failed to show that counsel refused to call him as a witness despite his contrary wishes. Petitioner cannot demonstrate that counsel's performance was deficient,

inasmuch as nothing in this record supports the conclusion that counsel erred so seriously that he was not functioning as "counsel" guaranteed by the Sixth Amendment.  <u>See</u> <u>Strickland</u>, 466 U.S. at 686.  Petitioner's claim in Ground 2 therefore fails under <u>Strickland</u>, inasmuch has he cannot establish that counsel's performance was deficient.

Even if counsel's performance could be said to be deficient, petitioner could not demonstrate that he was prejudiced thereby, and his claim would fail under <u>Strickland</u> for that reason as well.  In an effort to establish prejudice, petitioner argues that, because counsel failed to call him to testify, the jurors were unable to hear petitioner's explanation of his whereabouts on August 26 through August 27, and about how the police used coercive tactics in order to obtain his confession.  In rejecting this argument, the Missouri Court of Appeals wrote as follows:

> [Petitioner] has not met his burden to show that he was prejudiced by his failure to testify.  [Petitioner] has not shown a reasonable probability that the result of the proceeding would have been different had he testified.
>
> At the evidentiary hearing, [petitioner] testified to the following regarding his whereabouts on August 26-27, 1997.  On August 26, 1997, between 8:00 and 9:00 a.m., [he] got on a bus to go to a probation hearing in Clayton that was scheduled for 10:00 a.m.  He was in court for about an hour to an hour and a half.  He then got back on the bus to return to St. Louis City where he stopped at Pendleton's house 'for a minute,' from sometime between noon and 2:00 p.m. until about 6:00 and

-18-

7:00 p.m., when a friend of his, Charles Crawford, picked him up and took him to the house of his cousin, James Jones (Jones), on the south side of the city. [Petitioner] spent the night at Jones's house. Sometime after 9:00 a.m. on August 27, [petitioner] left Jones's house to go to his mother's house.

[Petitioner's] self-serving testimony has internal conflicts, including his stating that he stopped at Pendleton's house 'for a minute' and then his providing times that would place him there for at least four hours, that would allow for unaccounted for periods during which Victim's killing might have occurred.

Further, at the evidentiary hearing, [petitioner] testified that while the police were interrogating him at the police station, one of the officers, whose name he did not recall, hit him over the head with a phone book and he could not remember anything after that point. Trial counsel testified that he did not recall [petitioner] telling him about such an incident and that, in light of his other concerns, he would not have called [petitioner] to testify just to state that he was hit over the head with a phone book.

(Resp. Exh. J at 7-8.)

In this case, it cannot be said that petitioner was prejudiced by counsel's failure to call him to the witness stand. As found by the post-conviction motion court and by the Missouri Court of Appeals, the testimony petitioner said he would have offered regarding his whereabouts was self-serving and contradictory, and did not account for the entire period of time during which the killing may have occurred. Also self-serving was petitioner's unsubstantiated claim that an unknown police officer

hit him with a telephone book.  It cannot be said that depriving the jury of petitioner's purported alibi testimony or testimony regarding an unsubstantiated assault undermines this Court's confidence in the outcome of petitioner's trial, and petitioner therefore could not demonstrate prejudice.  Furthermore, the Missouri Court of Appeals applied the <u>Strickland</u> standard, and petitioner has failed to demonstrate that such application was unreasonable.

The decision was well-based on law and fact, and was not "contrary to" nor involved an "unreasonable application of" clearly established federal law.  28 U.S.C. § 2254(d)(1).  Nor has petitioner demonstrated that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  Petitioner's claim in Ground 2 of the instant Petition is without merit, and should be denied.

C.   <u>Ground 3</u>

In Ground 3, petitioner claims that trial counsel was ineffective for failing to call Darlene Pendleton to testify on his behalf.[6]   Petitioner raised this issue in his post-conviction

---

[6]In his Traverse, petitioner seems to imply that counsel failed to conduct an adequate investigation concerning Ms. Pendleton, but does not allege specific facts showing how counsel's investigation was deficient.  <u>See</u> (Docket No. 15 at 14-15.)  The petition must state the facts supporting each ground.  Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts.  In addition, inasmuch as petitioner did not argue that counsel failed to conduct an adequate investigation in his post-conviction motion or on appeal from the denial

motion, and it was denied following an evidentiary hearing.[7]
Petitioner raised this issue again on appeal of the denial of that
motion. Upon review of the merits of the claim, the Missouri Court
of Appeals applied the <u>Strickland</u> standard and applicable state law,
and affirmed. (Resp. Exh. J.) The court reasoned that counsel's
decision not to call Ms. Pendleton was reasonable trial strategy,
and that petitioner had not shown that the testimony Ms. Pendleton
would have offered would have provided petitioner with a viable
defense, inasmuch as she was able to account for only a limited
amount of time during the period of time in which it was thought the
victim was killed. Specifically, the Missouri Court of Appeals
wrote:

> The record supports the motion court's findings and
> conclusions. At the evidentiary hearing, Pendleton
> testified that she first saw [petitioner] on August 26,
> 1997 at about 6:00 to 6:30 p.m. at her house and that he
> stayed for about 30 to 45 minutes until "Charles" picked
> him up. She remembered that she saw him on August 26
> because two days earlier he was at her house for a
> birthday party. She also stated that [petitioner's]
> trial counsel telephoned her before trial, and she spoke
> with him on the telephone once, after which trial counsel
> told her he could not use her at trial.
>
> At the evidentiary hearing, trial counsel testified
> that he decided not to call Pendleton as a witness

---

of that motion, such claim would be procedurally barred from review in this
Court, <u>O'Sullivan</u>, 526 U.S. at 845, and petitioner makes no attempt to establish
cause or prejudice to excuse such a default. <u>Murray v. Carrier</u>, 477 U.S. 478,
496-97 (1986).

[7]In his post-conviction motion, petitioner additionally alleged error in
counsel's failure to call two witnesses in addition to Ms. Pendleton. (Resp.
Exh. F at 27. On appeal from the denial of that motion, and in this Court,
however, petitioner named only Ms. Pendleton. (Resp. Exh. H); (Docket No. 1 at
13.)

because he was concerned about her credibility in being able to pick a day out at random that she remembered, [petitioner] was only with Pendleton for a short period of time, and the specific time of Victim's death was not established.

We conclude that trial counsel was not ineffective for failing to call Pendleton as a witness because the decision was reasonable trial strategy and [petitioner] has not shown that her testimony would have produced a viable defense, as Pendleton testified to [petitioner's] whereabouts for only a limited period of time, and Victim's killing might have occurred either before or after this time period.

(Resp. Exh. J at 9.)

Review of the state court's decision reveals no error. The determination of whether to call certain witnesses is left to trial counsel as a matter of trial strategy. See <u>U.S. v. Washington</u>, 198 F.3d 721, 723-24 (8th Cir. 1999). Under the instant facts, it cannot be said that counsel's performance was deficient because he failed to call Ms. Pendleton to testify. As the Missouri Court of Appeals noted, during petitioner's evidentiary hearing counsel testified that he contacted Ms. Pendleton and spoke to her before trial, and decided not to call her to testify because he had concerns about her credibility, and because her testimony would not have necessarily helped petitioner, inasmuch as she could account for petitioner's whereabouts for only a portion of the time during which the killing could have occurred. There is no evidence in the record before this Court that counsel was anything less than diligent in investigating the potential of Ms. Pendleton as a witness. The record demonstrates that counsel made a strategic

decision not to call Ms. Pendleton after investigating and thoughtfully considering the matter. Strategic decisions made by counsel after a thorough investigation of law and facts are "virtually unchallengeable." Strickland, 466 U.S. at 690; see also McGurk v. Stenberg, 163 F.3d 470 (8th Cir. 1998) (citation omitted)( A habeas petitioner is more likely to prevail on an ineffective assistance claim when the error he notes arises from counsel's lack of diligence, rather than the exercise of judgment).

Even if it could be said that counsel's performance was deficient for failing to call Ms. Pendleton, it could not be said that petitioner was prejudiced thereby. As noted above, Ms. Pendleton was unable to account for petitioner's whereabouts during the entirety of the time during which it was estimated that the victim was killed. It therefore cannot be said with any certainty that the results of petitioner's trial would have been different had he had the benefit of Ms. Pendleton's testimony. Finally, the Missouri Court of Appeals applied the Strickland standard, and petitioner has failed to demonstrate that such application was unreasonable.

The decision was well-based on law and fact, and was not "contrary to" nor involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner demonstrated that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding. 28 U.S.C. § 2254(d)(2). Petitioner's claim in Ground 3 of the instant Petition is without merit, and should be denied.

D.   Ground 4

In Ground 4, petitioner argues that trial counsel was ineffective for failing to request a jury instruction, MAI-CR 308.14, which would have instructed the jury that it could draw no adverse inference from petitioner's failure to testify.  Petitioner raised this issue in his post-conviction motion, and on appeal from the denial of that motion.   In denying petitioner's claim, the Missouri Court of Appeals noted that, during the instruction conference at trial, petitioner's counsel stated that he would not request MAI-CR 308.14 because, as a matter of trial strategy, he had decided it best to avoid emphasizing to the jury petitioner's failure to testify.  (Resp. Exh. J at 10-11); see also (Resp. Exh. B at 589-91.)  The court further noted that, during the instruction conference, petitioner's counsel  stated that he did not want the prosecutor to comment about petitioner's failure to testify, and the trial court stated "I'm sure [the prosecutor] won't mention in any way his failure to testify at trial."  (Resp. Exh. J at 11); see also (Resp. Exh. A at 591.)  Finally, the Missouri Court of Appeals noted that, during the evidentiary hearing held on petitioner's post conviction motion, trial counsel testified that he had not wished to draw the jury's attention to the fact that petitioner had not testified, to avoid illuminating or highlighting the absence of his

-24-

testimony.  (Resp. Exh. J at 11); see also (Resp. Exh. G at 47.)
Review of the state court's decision reveals no error.

In evaluating an attorney's performance, this court "must
indulge a strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance." Strickland, 466
U.S. at 689.  The basic inquiry is "whether counsel's assistance was
reasonable considering all the circumstances." Id. at 688.

Petitioner must overcome the presumption that, under the
circumstances at trial, counsel's action might be considered sound
trial strategy. Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101
(1955)); see also Flowers v. Norris, 585 F.3d 413, 417 (8th Cir.
2009).  Strategic decisions made by counsel after a thorough
investigation of law and facts are "virtually unchallengeable."
Strickland, 466 U.S. at 690.  A habeas petitioner is more likely to
prevail on an ineffective assistance claim when the error he notes
arises from counsel's lack of diligence, rather than the exercise
of judgment. McGurk, 163 F.3d 470.

In support of his claim, petitioner suggests that, during
closing argument, the prosecutor commented regarding petitioner's
failure to testify.  In his Traverse, petitioner quotes the
following passages from the prosecutor's closing argument:

**I cannot tell you exactly how the defendant killed
Ms. Brame**.  I can't tell you whether he hit her with the
pot, knocked he [sic] down and then tied this shoelaces
[sic] around her while she was on the ground.  I can't
tell you if she was standing up when he came up behind he
[sic] and tied his shoelaces.  I can't tell you whether

it took her tin [sic] minutes to die, if he had to get a
pillow to speed this process along.  I wish I could tell
you exactly how Ms. Brame died.

**I can't tell you exactly how he did it**. . .

* * *

And we also know that there had been a change in the
relationship.  How do we know that?  Well, all of a
sudden this person who lived with her before and visited
her before, now she won't let him in her house and she
will not come out on the porch to talk to him.  Now I'm
not going to speculate as to why the relationship
changed.  We know he was having trouble with his mother.
We know that his mother put him out of the house.
**There's no evidence as to why that is** . . .

(Docket No. 15 at 19) (emphasis by petitioner).

Petitioner argues that the prosecutor's remarks reminded

jurors that petitioner may not have testified because if he did

murder Ms. Brame, he would be the only one who could testify how it

was done.  Petitioner's argument has no merit.  As the Missouri

Court of Appeals noted, a prosecutor is permitted to comment on the

lack of evidence or witnesses.  <u>See</u> <u>Burton v. Dormire</u>, 295 F.3d 839,

847-48 (8th Cir. 2002) (citing <u>Yancey v. Housewright</u>, 664 F.2d 187,

190 (8th Cir. 1981) (the prosecutor merely stated the obvious, that

there were no witnesses in existence)).

Petitioner herein cannot overcome the presumption that

counsel's strategic decision not to request MAI-CR 308.14 falls

within the wide range of reasonable professional assistance under

<u>Strickland</u>.  The trial transcript includes a record of the jury

instruction conference, and reflects that counsel considered the "no adverse inference" instruction, and stated that he was declining to request it because of the potential that it would underscore to the jury petitioner's failure to testify. Counsel's decision was in accord with Missouri law, which provides that it is reasonable for counsel to forgo requesting the instruction believing that it emphasizes the fact that the defendant did not testify. <u>Knese v. State</u>, 85 S.W.3d 628, 634-35 (Mo. banc 2002). The record further reflects that counsel specifically discussed with the court and opposing counsel that there were to be no comments made regarding petitioner's failure to testify, and gained the trial court's assurance that defense counsel would make no such comments. Defense counsel's strategic decision not to request MAI-CR 308.14 was not unreasonable or outside of the "wide range of reasonable professional assistance," <u>Strickland</u>, 466 U.S. at 689, and petitioner therefore cannot demonstrate that counsel's performance was deficient.

In addition, as the Missouri Court of Appeals noted, any attempt by petitioner to argue that he was prejudiced by counsel's failure to request MAI-CR 308.14 would be mere speculation. Indeed, there is nothing in the record before this Court suggesting that there is a reasonable probability that, had counsel requested MAI-CR 308.14, the result of petitioner's trial would have been different. <u>See Strickland</u>, 466 U.S. at 694. Furthermore, the Missouri Court of Appeals applied the <u>Strickland</u> standard, and petitioner has

failed to demonstrate that such application was unreasonable.

The state court's decision was well based on law and fact and was not "contrary to," nor did it involve an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). In addition, petitioner has not shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(2). Petitioner's claim in Ground 4 is without merit and should be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that petitioner Johnnie Little's Petition For Writ Of Habeas Corpus (Docket No. 1) be dismissed without further proceedings.

The parties are advised that they have until January 20, 2010, to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_____
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of January, 2010.